Good morning, counsel. You said you had a little help in advance from the last case, in which counsel gave an answer to what to do if the state law is silent on the question. Do you want to start with that and tell us what the answer is? Yes. So first, may it please the Court, Christy Hughes from Federal Defenders on behalf of Mr. Lopes. So we are in the situation that Judge Wynn identified where Utah is silent on this issue of jury unanimity. There's no jury instructions for the offense, and the parties haven't found any case law requiring jury unanimity. And so what that means is because we don't know that jury unanimity is required, we can't ever conclude that the controlled substance is an alternative element because the jury was never required to find that element. Well, since there's no law in Utah, why shouldn't we ask the Utah Supreme Court what the law is or would be? Well, we could, Your Honor, but I think based on what this Court said in Rendon and based on the nature of the categorical approach, I think that's unnecessary. So in Rendon, the Court said only when state law requires unanimity about the statutory phrase at issue are we able to conclude that the statute contains alternative elements and not alternative means. And so in other words, only if we have evidence that the jurors had unanimously agreed do we know that they necessarily convicted the person of the particular controlled substance versus an overbroad portion of the statute. And that's important because without unanimity required, when we go to the next step of the modified approach, we're just guessing about what he was necessarily convicted of. And that's what the categorical approach is meant to take care of. Counsel, this case is actually a little easier for me than the last case. As you know, I authored Coronado, and maybe I was right, maybe I was wrong in that case, but it is law of the circuit now. And Judge Reinhart authored Rendon, and I think there's a way in a lot of cases that the two still work and they're not conflicting with each other. I don't know that this is one of them. And in this particular case, the statute, to me, is structured very similarly to the statute that was issued in Coronado. So you're going to have to convince me that somehow Coronado is distinguishable. Well, Your Honor, it's distinguishable because we know from the later case in Rendon that a disjunctively worded statute does not end the inquiry here. We have to look at how the state law treats that statute and whether or not it requires jury union. Right, and I agree with you. A disjunctively worded statute, that's not the end of the analysis. But you've got a Utah statute where the punishment depends on the type of substance that's charged. And as the Third Circuit points out correctly, I think in my view that under a lien and apprendi the prosecutor's got to charge and prove that substance because that controls the punishment. So how do you address that point? Well, I have two responses, Your Honor. The first is that there's nothing to show that Utah prosecutors are actually complying with the requirement in apprendi and a lien. So the government has cited no Utah case law that that's actually how they charge the statute. But the second point is that the punishment turns on the schedule that the controlled substance is listed in. And so a prosecutor could charge distribution of a controlled substance listed in Schedule 2 and still advise of the punishment. And that doesn't get us any further because there's a number of substances in Schedule 2 that are not listed in the CSA. And I'm probably going to mispronounce these, but a few of them are nabalone, ebane, carfentanil, amobarbital. I can submit a list to the court later so they're spelled correctly if you prefer. But that doesn't really get us any further. Well, that addresses the question of whether there's a categorical match. Now we have to figure out the divisibility analysis so that we can determine whether we can look at the Taylor-Shepard documents or not. And as to the divisibility to figure out is it an element or are these alternative means, I think it does matter that the punishment differs depending on the type of substance charged. Well, again, I think the punishment matters depending on the schedule that the substance is listed in. It's not necessarily the substance that's charged. And because we don't know that the jury had to select the particular substance out of Schedule 2, the way that the categorical approach works is that we're looking at what he was necessarily convicted of. And so what the Supreme Court said in Moncrease is because we're looking at what someone was necessarily convicted of, we must presume that the conviction rested upon nothing more than the least of the acts criminalized and then determine whether even those acts are encompassed by the generic federal offense. And so if we do that here, we look at whether the least, some of those substances that I mentioned that I mispronounced, whether those meet the CSA, and they don't. And so because we don't know necessarily that a jury had to select which of those either qualifying or non-qualifying substances were at issue in his conviction, we never know whether he's necessarily been convicted of that offense. And so when we're sort of carrying through that presumption and the notion that we're looking at what he's necessarily been convicted of and we carry that through the divisibility analysis, I think that's why this court said in Rendon, only when the state requires jury unanimity do we know what he's necessarily been convicted of. Because otherwise, we're guessing, did the jury select this substance? Did the jury select this substance? We think we know, but even when we go to the modified documents, it's still a guess because we don't know that the jury had to find that. And so therefore, we don't know that the jury had to find, I'm sorry, we don't know that that's an alternative element because there's nothing to show that the jury had to agree on that particular substance. Even setting aside Coronado, if we were to go your way in this case, would that create a circuit split with the Third Circuit? Well, I don't think that the Third Circuit, is Your Honor talking about the Pennsylvania case that the Abbott? Correct. So that case didn't actually look to state law. And so I think that if we say that Coronado gets us part of the way there and the Pennsylvania case gets us part of the way there. It's the mode of analysis, right? I think going your way means adopting a different mode of analysis than the Third Circuit adopted in Abbott. So would that create a circuit split? I don't think so, Your Honor. I think that they're still reconcilable because the Pennsylvania case did not necessarily go that further step. They said it's disjunctive and they moved on. Even in Coronado, Your Honor, in the footnote, Coronado addressed California law. The defendant had argued that California law said one thing and the Coronado court addressed the criminal jury instructions in the footnote there. And so I don't think that there's a circuit split there. I think this court has already held that we have to look to state law when we're determining divisibility. If this court doesn't have further questions, I'll reserve the remainder of my time. Thank you. Thank you. Good morning, Your Honors. May it please the court. I'm Ann Perry on behalf of the U.S. Attorney's Office in the Southern District of California. Your Honors, under Apprendi, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. In this case, the Utah statute, as has already been observed by Your Honors, involves an increase based on the nature of the schedule of the substance. We would urge this court to follow the approach of the Third Circuit listed in the Abbott case, which we did have in our brief, and also it was before the district court in this matter. Besides the fact that the United States has shown that this statute is divisible, we recognize we all looked to see if there were any jury instructions. We all looked to see if we could find any case law on the subject, and we were unable to do so. However, this court in Quintero Junco, I believe it is, 754 F. 3rd 746, did not discuss jury instructions, but found that the statute involved was divisible with respect to the age of a victim on a case. Similarly, in the Abbott case, the Third Circuit examined the elements of the offense, which were very, very similar, both to the California statute and to the Utah statute. I'd also like to point out to the court that this appeal was filed on two different bases. One was the administrative removal, which very much turns on whether or not this court finds that the drug statute was divisible and therefore an aggravated felony. But also, there was a 2008 removal from an immigration judge, and I wanted to point out to the court that in preparation for the oral argument, we looked back at the various documents, and in that particular case, there was no reference in the notice to appear about the aggravated felony. In other words, that the defendant had been removed entirely because he had entered without inspection. That's very important here because the argument was raised in the appellant's briefs that the defendant was entitled to be advised of his right for pre-conclusion voluntary departure. And there's a difference in the law. One of my more learned colleagues pointed this out to me, that there's a difference in proving what the burden is for removability and granting relief. And that actually... Is this an argument? You said that the issue isn't raised in the briefs. It is actually raised in the briefs, Your Honor, because the argument was made by the appellant that he was entitled to be advised of pre-conclusion voluntary departure. And one of the things that we determined, and I may have to file a 28-J letter on this for the actual citation, but this court in Vidal-Mendoza said, 705 F. 3rd 1012, stands for the proposition that an alien who was or wasn't informed on avenues of relief must be advised of relief that was available at the time. My point is, in 2008, this was pre-decamp. It was pre-the arguments about divisibility. The statute of which the appellant in this case was convicted, Your Honor, was a drug trafficking conviction at the time. The court has before it, as part of its excerpts of record, the various charging documents, a plea document where the defendant actually admitted his culpability in distribution of cocaine, a substance that is listed in the Controlled Substances Act. And therefore, the fact that he wasn't advised of his right to pre-conclusion voluntary departure was not error because at that time, there wasn't the argument of divisibility. There wasn't this whole issue. At that time, in 2008, was a drug trafficking offense for which he could have been removed. But I'm trying to find... Your argument is that you should prevail on the basis of that other removal. It is our position that we should prevail on both removals. Both of them were before the... Suppose you lost on the one that we've been talking about up to now. Okay. Then your argument is that you should prevail anyway. Yes. On the basis... Now, is that argument raised in the brief? Not entirely, no. We did not analyze the whole issue of the Vidal-Mendoza. That is true. And we would submit that by way of a 28-J letter post this argument. All right, go ahead. I don't know if the court wishes me to address the admission of the four removals or is it really... I think that the key argument here is really the visibility of the Utah statute. It is our position, Your Honors, that Coronado v. Holder does control this analysis, that the Abbott case and that we would agree with Judge Nguyen that if this court were to hold otherwise, it would create a circuit split with Abbott because Abbott seems to have done a very similar analysis on a very similar statute in very similar circumstances. Well, what is the problem, I ask your opponent, what is the problem with asking the Utah Supreme Court to tell us what the law is in Utah? I don't have that ability to ask them. This is not the first time this court has asked me a similar question like that because I've argued several cases dealing with Utah law and all the parties scoured the law and we were unable to find any particular jury instructions dealing with this particular statute. We were unable to find any case law that dealt with this. Fortunately, we could find the Utah Supreme Court. That's not very hard to find. This is true. So the question is, do you have any objection to our asking the Utah court to tell us what the law is in Utah? Of course not. If it resolves an issue that is so important to this circuit, absolutely. Well, it's not very important to the circuit if the Utah Supreme Court says yes or no for us to say here's the law in Utah. It wouldn't help us out too much. No, but I think what we deal with, Your Honor, is sometimes we deal with what's there, what's in black and white. We have a statute that lists elements, that we have a statute that under Apprendi the jury would by necessity have to find certain substances otherwise they could not impose or the court in sentencing could not impose a sentence that it wants to impose. Are all the substances in that part of the statute covered by the federal statute or is it broader than that? I believe they're slightly broader. That being said, Your Honor, in this case, assuming that the statute is divisible, we have ample documentation under a modified category. Well, the question is whether it is divisible. It's certainly our position that it is. Of course. In this course. I'd be surprised if it wasn't. And with all due respect to Your Honor, we urge this court to follow Coronado v. Holder. But it is also our position that Rendon and Coronado are not irreconcilable. Well, I hope not. Okay. If the court has no further questions, I'll submit. Thank you, Kat. Thank you very much, Your Honor. I have three points on rebuttal, Your Honors. The first is this court already held in Padilla-Martinez, which was a disjunctively worded California drug statute, that just being a drug statute is not enough. In Padilla-Martinez, it still looked to California state law to determine the issue of divisibility. So I don't think that looking to Utah state law here would create a conflict. The second is regarding certifying this question to the Utah Supreme Court. Even if the Utah Supreme Court says, no, jury unanimity is not required, or we're not, I'm sorry, it doesn't say no, but it says we're not going to address your question, we're not going to certify it, we're still left in a situation where we have no certainty about what the jury had defined. And therefore, we can't find that Mr. Lopez was necessarily convicted of an offense involving a drug in the CSA. My third point is about Vidal-Mendoza. Vidal-Mendoza isn't even cited in the government's briefs. They didn't raise this argument about going back in time. But divisibility is not an issue. It's a legal question. We're saying, is the statute divisible or is it not? We're not looking back in time to what someone would have had to prove in immigration court, which is really what those cases talk about. It's the issue of relief and not removability. And following on that, Your Honor said something about the 2008 removal versus the 2007. This issue of divisibility still affects the 2008 removal as well. If it wasn't divisible, then he didn't have an aggravated felony and he was eligible for voluntary departure relief. So the divisibility issue runs through both of our arguments. Thank you, Your Honors. Thank you, Counsel. The case just argued will be submitted.
judges: Reinhardt, Noonan, Nguyen